**Jawad HUSSAIN, Plaintiff**

v.

**Michael CHERTOFF, Emilio T. Gonzelez, Denis Riordan, and Robert S. Mueller, Defendants.**

**C.A. No. 06–11926–MLW.**

United States District Court, D. Massachusetts.

May 10, 2007.

Gregory Romanovsky, Law Office of Boris Maiden, Brookline, MA, for Plaintiff.

Mark T. Quinlivan, United States Attorney's Office, Boston, MA, for Defendants.

*MEMORANDUM AND ORDER*

WOLF, District Judge.

## I. INTRODUCTION

Plaintiff Jawad Hussain seeks relief pursuant to 8 U.S.C. § 1447(b) and asks that the court grant his application for naturalization. Although the government has persistently delayed adjudication of this matter, it does not now seek a remand to the United States Citizenship and Immigration Services ("USCIS") or oppose the plaintiff's application. After a hearing on April 20, 2007, the court finds that Hussain has met all the necessary requirements of citizenship and has demonstrated the earnest desire to join his family in assuming the privilege and obligations of that office. Therefore, his petition is being allowed and USCIS is being ordered to cause Hussain to be naturalized forthwith.

## II. BACKGROUND

In March, 2004, Hussain filed an application for naturalization with USCIS. A native of Bangladesh and a citizen of Pakistan, Hussain has fulfilled the five year physical presence requirement and all other administrative prerequisites for a naturalization application. March 26, 2007 Hussain Aff. ¶¶ 1, 2; March 20, 2007 Sposato Aff. ¶¶ 20–21.

A background check by the Federal Bureau of Investigation ("FBI") was completed on about August 17, 2004. That check indicated that Hussain might have a record on the Interagency Border Inspection System, a system that contains record and watch list information including, but not limited to, information related to persons who are wanted or under investigation for serious crimes or suspected of terrorism-related activity. However, no further background review was conducted at that time.

Hussain was interviewed by USCIS on November 17, 2004. The defendants did not, however, decide his application.

Two years after his completed interview, Hussain petitioned this court for relief.

Only then did USCIS renew its investigation. It first requested Hussain's file from the Boston District Office. However the file was lost. In 2007, after obtaining a duplicate file, USCIS collected what it characterized as classified information on Hussain.

Subsequently, USCIS requested a second interview of Hussain. The request was not timely because a second interview must be conducted within 120 days of the first. *See* 18 C.F.R. § 335.3(a).[1] Moreover, USCIS refused to describe the reasons for the requested second interview or the evidence to be submitted as required by the relevant regulation. *Id.* USCIS sought to justify its position by reference to the information's classified nature. *Id.* Hussain declined to be interviewed without the notice required by regulation. *Id.*

Since Hussain filed this action on October 23, 2006, adjudication of this case has been delayed by the government's conduct. Twice receiving requested extensions of time, the defendants did not respond to the petition until January 12, 2007, when they filed an answer. Representing that they would resolve the matter without judicial intervention, the defendants requested a delay of the hearing on the merits of the petition. The court allowed the parties more than a month to attempt to agree on a resolution of this matter.

On February 22, 2007, the court ordered that the parties make submissions in support of their positions. The proceedings were again delayed when the defendants did not inform the court of their position on the merits of Hussain's application. Instead, they requested that the court order a second interview of Hussain and a remand to USCIS for resolution of the application.

The defendants did not explain or seek to justify this request. Therefore, the court ordered the defendants to submit an affidavit in support of it. *See* March 15, 2007 Order. In addition, the court stated that a remand might not be warranted if the defendants could not explain their failure to resolve Hussain's application within the statutory 120–day period and assure the court that no further delays would occur. *Id.* Moreover, the court noted that it might not have the authority to order an additional interview without Hussain's consent. *Id.* (citing 8 C.F.R. § 335.2(b), which requires background checks be completed before the first interview, and 8 C.F.R. § 312.5, which provides that an untimely second interview is permissible only with the agreement of the applicant). Accordingly, the court ordered that the defendants address, among other things, why they had failed to make a timely decision on Hussain's application and what recommendation USCIS would make to the court on the then existing record. *Id.*

To explain why they did not decide Hussain's naturalization application within the 120 days after his initial interview as required by law, the defendants stated that

---

1. 8 C.F.R. § 335.3(a) states:
 Rather than make a determination on the application, the Service officer may continue the initial examination on an application for one reexamination, to afford the applicant an opportunity to overcome deficiencies on the application that may arise during the examination. The officer must inform the applicant in writing of the grounds to be overcome or the evidence to be submitted. The applicant shall not be required to appear for a reexamination earlier than 60 days after the first examination. However, the reexamination on the continued case shall be scheduled within the 120–day period after the initial examination, except as otherwise provided under § 312.5(b) of this chapter. If the applicant is unable to overcome the deficiencies in the application, the application shall be denied pursuant to § 336.1 of this chapter.

the terrorist attacks of September 11, 2001 necessitated "more rigorous and thorough security checks on aliens[.]" March 20, 2007 Sposato Aff. ¶ 7. These demands "severely tested the abilities of the law enforcement agencies to provide timely responses and of USCIS to issue decision on applications promptly." *Id.* at ¶ 8. The defendants further explained that the unit established to address background checks was "unable to handle the volume of national security and public safety referrals that were being received from the field." *Id.* at ¶¶ 13–14.

Compounding these strains were USCIS's own administrative choices and failures. Following Hussain's November 17, 2004 interview, USCIS took responsibility for conducting "beginning-to-end processing of background security check resolution efforts" except for those cases already referred to other agencies. *Id.* at ¶ 25. The defendants presume that USCIS did not further investigate Hussain's application because it had already been referred to another agency. *Id.* In May, 2005, six months after Hussain's initial interview, USCIS decided that review by other agencies was inadequate. *Id.* Therefore, it ordered new background checks for all pending national security cases. *Id.* Apparently this included Hussain's. *Id.* Despite this order, no new check was completed for Hussain until seventeen months later, and only then because Hussain filed the instant petition. *Id.* at ¶¶ 25–27.

Finally, and despite the court's order that the defendants make a recommendation to it, the defendants stated only that the that they could neither recommend nor oppose Hussain's application for citizenship. Nevertheless, they continued to seek a remand and further interview of Hussain on the basis of classified information that was not revealed to the court.

After a March 30, 2007 hearing on the request for a remand, the court ordered, among other things, that the defendants submit to it, *ex parte* and under seal, any relevant classified information. *See* April 2, 2007 Order. The defendants responded by informing the court that they no longer wished to use classified information and that they were, therefore, withdrawing their request for a remand and further interview. *See* Def. Response to Order of April 2, 2007.

Accordingly, on April 20, 2007, the court conducted an evidentiary hearing to develop information concerning Hussain's fitness for United States citizenship. At the outset of the hearing, the government represented that it did not oppose granting Hussain citizenship, but wished to ask him several questions.

At the hearing, Hussain testified that he had innocently but mistakenly asserted in his naturalization application that he had never been charged with committing a crime. He now knows that he was, while a student in Oklahoma sixteen years ago, charged with writing a check for which he had insufficient funds. The charge was filed between 1994 and 1995, while Hussain was residing temporarily in Pakistan. Hussain explained that he was not aware of the charge until he recently investigated his official records to ensure his eligibility for citizenship. Subsequently, the charge was dismissed, without a guilty finding or admission, when Hussain paid the outstanding debt.

In response to questions by the government, Hussain explained that he had made trips to Canada and Pakistan, had a brief layover in the United Kingdom, and in 2006 had telephoned his cousin in Pakistan to congratulate him on his wedding. That questioning elicited no information indicating that Hussain had contact with any

criminals or terrorists on those trips, the call, or at any other time.

Rather, the evidence indicated that Hussain had successfully pursued the traditional immigrant's dream. While in the United States he earned a master's degree in business administration, progressed and prospered while rising to the position of vice-president of the Bank of America, and had four children born as American citizens. Hussain explained his sincere desire to join his wife and children by becoming a United States citizen. He expressed pride that his children could share in the opportunity, given to every American, "to excel in every possible way." He also explained that he wanted to become a United States citizen in part because, in his nearly forty years, he had never had the opportunity to vote.

At the conclusion of the evidentiary hearing, the government stated again that it did not oppose Hussain's application for citizenship.

## III. DISCUSSION

■ The law requires that USCIS decide to grant or deny an application for naturalization within 120 days of the initial interview. *See* 8 C.F.R. § 335.3(a).[2] Failure to do so allows an applicant to apply to the United States District Court for relief. *See* 8 U.S.C. § 1447.[3] A properly filed § 1447 application vests the court with jurisdiction to "determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." *Id.* As Hussain filed the instant petition over two years after his November 17, 2004 interview with USCIS, and because USCIS never made a decision on Hussain's application, this court has jurisdiction.

The court would generally prefer that USCIS, the expert agency charged with the primary responsibility, decide the merits of an application for naturalization. However, USCIS refused to express a view on the merits of Hussain's application, even after being ordered to do so, without a second interview of Hussain. As described earlier, the 120 day period in which USCIS could have compelled a second interview expired long ago, *see* C.F.R. § 335.3(a), the defendants have been unwilling to give Hussain the legally required notice of the basis for the proposed second interview, *id.*, and the defendants no longer seek a remand. Therefore, it is necessary and appropriate that the court decide whether Hussain should be allowed to become a United States citizen.

An applicant for naturalization must satisfy several requirements. Among other things, he must demonstrate an under-

---

**2.** 8 C.F.R. § 335.3(a) states:

> The Service officer shall grant the application if the applicant has complied with all requirements for naturalization under this chapter. A decision to grant or deny the application shall be made at the time of the initial examination or within 120–days after the date of the initial examination of the applicant for naturalization under § 335.2. The applicant shall be notified that the application has been granted or denied and, if the application has been granted, of the procedures to be followed for the administration of the oath of allegiance pursuant to part 337 of this chapter.

**3.** 8 U.S.C. § 1447 states:

> Request for hearing before district court. If there is a failure to make a determination under section 335 before the end of the 120–day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

standing of the English language and "knowledge and understanding of the fundamentals of the history, and the principles of government, of the United States." 8 U.S.C. § 1423. He must not advocate or teach certain totalitarian forms of government, or be affiliated with those who do. 8 U.S.C. § 1424. He may not be a deserter from the armed forces or have refused to serve in the armed forces on the basis of his alienage. 8 U.S.C. §§ 1425 and 1426. He must not be an illegal alien. 8 U.S.C. § 1429. He must satisfy certain residence and physical presence requirements. 8 U.S.C. § 1427(a)-(c). He must also be of good moral character. 8 U.S.C. § 1427(d).

■ At the April 20, 2007 evidentiary hearing, the court heard testimony concerning Hussain's eligibility for citizenship. The only factor in possible question was Hussain's moral character. As stated by statute, and more plainly described by Judge Rya Zobel, factors that might demonstrate the absence of the required good moral character include, but are not limited to, the facts:

> that the applicant either is or was (1) a drunkard, (2) ineligible for a visa or admission to the United States on the basis of health-related, criminal or security grounds, labor certification issues, being a "public charge" (e.g., needing public assistance), illegal entry, insufficient documentation, ineligibility for citizenship, previous removal as an alien, or other miscellaneous grounds, (3) a professional or convicted gambler, (4) a provider of false testimony in order to obtain immigration benefits, (5) serving a sentence of incarceration for an aggregate period of 180 days or more, (6) convicted of a felony, or (7) a participant in Nazi, genocidal, torture or extrajudicial killing activity. *See* 8 U.S.C. § 1101(f).

*Shalan v. Chertoff,* No.05–10980–RWZ, 2006 WL 1308175, *1 (D.Mass. May 9, 2006). Hussain's history does not implicate any of these factors.

The only issue reflecting negatively on Hussain's application is his inadvertent failure to disclose a past criminal charge. This oversight does not represent bad moral character. Rather, it is a mere error caused by the fact Hussain was not aware of the bad check charge when he filed his application. *See Shalan,* 2006 WL 1308175, at *1 (mistaken characterization of continuance as a dismissal "does not reveal anything negative about [applicant's] moral character").

Moreover, no evidence that Hussain has associated with possible criminals or terrorists has been presented. It may be that Hussain's calls to family members in Pakistan and his travel to that country initially caused the government to want to pursue some open questions. However, neither the evidence presented at the April 20, 2007 hearing nor anything else suggests that Hussain was engaged in any improper activity or that he associated with any one who was. The government has not presented evidence that Hussain actually has a record on the Interagency Border Inspection System or that there is any reason to be concerned about him becoming a United States citizen.

Hussain has had a successful career in the United States. He appreciates the great opportunities and responsibilities of United States citizenship, and has expressed a sincere desire to join his wife and children by becoming a full member of our community. The government does not oppose granting Hussain's petition and the court finds no reason to do so. Rather, Hussain has proven that he is entitled to become a United States citizen.

## IV. ORDER

Accordingly, it is hereby ORDERED that the Plaintiff's Application for Naturalization is ALLOWED and USCIS shall cause Hussain to be naturalized forthwith.